JAMES G. HUMAN & Co., Respondents, v. HENRY CUNIFFE & Co., Appellants.

*Partnership—Contract.*—A partnership contract which would be good without a seal will still be valid as a simple contract, although the partner who executed the instrument had no special authority to put the partnership name to such paper.

*Agent.*—Where an agent executed a note in the name of his principal, the principal will be bound if the agent had authority to give such note, or the principal afterward ratified his act.

*Appeal from St. Louis Circuit Court.*

The facts are stated in the opinion of the court.

*Casselberry*, for appellants.

I. The agreement described in the petition is under seal, and does not bind any one of the firm except the partner signing it. (Henry County v. Gates, 26 Mo. 315.)

II. The agent had no authority to execute the note described in the petition.

III. The fourth instruction is inconsistent with the sixth, given by the court on its own motion, and with the decisions of Taylor v. Maguire, 13 Mo. 517, and Lyon v. Bertram, 20 How. 149.

*Flournoy*, for respondents.

I. The act of Musick, the agent, binds his principals. It was ratified by them. (Stothard v. Aull, 7 Mo. 318; Sto. Ag., § 66, 67, 50; 2 Green. Ev., § 61.)

II. The instructions given fairly put the case to the jury. (Stothard v. Aull, 7 Mo. 318; 2 Green. Ev. 61; 1 Pars. Cont. 46; 9 Cranch, 153; Cames v. Bleeker, 12 J. R. 300; Odiorne v. Maxey, 13 Mass. 178; 2 Bouv. Ins. 25.)

BATES, Judge, delivered the opinion of the court.

The plaintiffs were partners in business, as were the defendants. On the 7th of March, 1857, they entered into the following agreement:

" This article of agreement, made and entered into by and between J. G. Human & Co., of Humansville, Mo., of the first part, and Henry J. Cuniffe & Co., of Las Cruces, N. M., of the second part, witnesseth, that said party of the first part agree to furnish the said party of the second part fifty yoke of work oxen, certain, and, probably, one hundred yoke of well broke oxen, to be delivered at Westport, Missouri, on the fifteenth day of April next, to said Cuniffe & Co., or their authorized agent; in consideration of which, said Cuniffe & Co. agree to pay said J. G. Human & Co. seventy-five dollars per yoke, in six months after the day of the delivery of said cattle at Westport, Missouri. None of the cattle are to be younger than four years, nor any of them to be older than eight. They are to be in good working condition when delivered. Furthermore, none of said cattle are to be from Texas or Arkansas; nor are any of them to be lame, blind or deformed, but to be sound when delivered.

21—VOL. XXXII.

"In witness whereof, we have herewith set our hands and seals this seventh day of March, 1857.

J. G. HUMAN & Co., [L. S.]

Per L. B. HUMAN.

HENRY J. CUNIFFE & Co., [L. S.]

"Witness—M. S. FIFE, CHAS. E. MUSICK."

The defendants afterward requested plaintiffs to furnish an additional number of oxen, not exceeding, in the whole, one hundred and seventeen yoke. The time of delivery was also postponed, because the grass was not sufficiently grown to support cattle. On the 22d day of May, 1857, the plaintiffs did deliver to an agent of the defendants one hundred and nine and a half yoke of oxen. The agent of the defendants gave plaintiffs a note for the price of the cattle so delivered; but his authority to give the note for his principals is questioned. A portion of the price of the oxen was subsequently paid, and this suit is brought for the remainder. The main ground of defence is that the oxen were not of the quality contracted for; and much conflicting testimony is given as to their quality. The defendants set up a counter-claim for their losses occasioned by the inferiority of the oxen. The defendants also set up that they are not bound by the written contract copied above, because it is under seal, and one partner cannot so bind a firm.

As to this point, it is sufficient to say here that it is conceded to be the law, that where a partnership contract would be good without a seal, the addition of a seal will not prevent it enuring as a simple contract, although the partner who executed the instrument had no special authority to put the partnership name to such a paper. (See Henry County v. Gates, 26 Mo. 315.)

Conflicting testimony was given as to the authority of Musick, the defendants' agent, to give the note in question, and also to a subsequent ratification of it by the defendants.

The court, at the instance of the plaintiffs, gave these three instructions:

1. If the jury believe from the evidence that Charles E.

Musick was the agent of defendants, and was authorized by them to receive the cattle and settle for them by giving the note in question, and that he did so receive and settle for them, then defendants are liable upon said note in the same manner as if executed by themselves. If the jury believe from the evidence that Charles E. Musick executed the note in question as the agent of the defendants, but without previous authority from them, but that defendants, after they were informed of the fact, ratified, assented to, or acquiesced in the said act of said Musick, then they are liable on said note; and such ratification or assent need not be expressed, but may be implied or inferred from circumstances which the law considers equivalent to an express ratification. If the jury believe from the evidence that Charles E. Musick executed the note in question without previous authority from defendants, and that the execution of said note was never subsequently ratified, assented to, or acquiesced in by defendants, but that defendants, by their agent, did purchase and receive cattle from plaintiffs under a special contract, then they are liable to plaintiffs for the value of said cattle so received at the contract price, if said cattle complied with the terms of said contract; and if not, defendants are still liable for the cattle so received at what they were reasonably worth at the time when, and place where, they were received by defendants or their agent.

2. If the jury believe that defendants, by their agent, had an opportunity and did examine the cattle before they received them, and saw their defects, if any they had, and that they could have rejected such as did not comply with the terms of said contract, and defendants, by their agent, received the cattle as coming up to the requirements of said contract, then they cannot now object to defects of which they were aware at the time they received them, and have no right to set up such defects as a defence to a suit for the price of said cattle.

3. If the jury believe from the evidence that, after the note in question was executed by said Musick as the agent of de-

fendants, but without previous authority from them, and that defendants were afterwards informed of the facts, and made no objection to the act of their said agent in drawing said note, and that afterwards defendants made payments to plaintiffs, or accepted and paid drafts drawn by them on account of said note, these facts are evidence tending to show that defendants acquiesced in the act of their agent in drawing said note ; and if they believe from the evidence that defendants did so adopt, assent to, ratify, or acquiesce in, said Musick's executing said note after they were informed of the fact, then they are liable on the note.

The court also, on its own motion, gave this instruction :

"If you find plaintiffs failed to deliver such cattle as were contracted for, and at the time contracted for, and such condition of the contract were not waived, and that the cattle were not received by Musick, acting as the agent of defendants, as coming up to the requirements of such contract, then defendants are entitled to recover on their counter-claim, and direct or approximate damages arising therefrom."

The court also gave, on motion of the defendant, this instruction :

"The acceptance of the cattle by defendants, through Charles E. Musick, is no waiver by defendants of any claim they may have had upon the plaintiffs for breach of the contract under which said cattle were delivered by them."

The court refused the following instructions, asked by defendants :

1. If the jury believe from the evidence that the oxen delivered by the plaintiffs to the defendants were not well broken, and were not, in all other respects, of the quality, kind and description specified in the counter-claim set up in the answer of the defendants, the plaintiffs can only recover whatever the jury believe from the evidence that said oxen were reasonably worth at the time of said delivery, after making such deductions as are alluded to in other instructions given with the instruction. If the jury believe from the evidence that there was sufficient grass on the plains on

Human v. Cuniffe.

which to subsist teams in travelling over the same after the time agreed on by the parties for the delivery of the oxen, and before the time they were really delivered, the defendants are entitled to whatever expenses, loss or damages they may have met in such delivery, by reason of the delay in such delivery. If the jury believe from the evidence that the defendants suffered expense, loss or damage in not arriving in the Territory of New Mexico with their goods as soon as they could have arrived if the plaintiffs had furnished oxen according to the contract mentioned in the counter-claim, they, the said defendants, are entitled to the amount of such expense, loss or damage.

2. If the jury believe from the evidence that the defendants suffered any expense, loss or damage, by reason of the plaintiffs not furnishing well broke oxen, according to the contract mentioned in the counter-claim, the defendants are entitled to the amount of such expenses, loss or damage.

3. The note given in evidence by the plaintiffs does not bind the defendants, unless the jury shall find from the evidence that Charles E. Musick was authorized by the defendants to execute the same; and the burden of showing that said Musick was so authorized at the time to execute the same rests upon the plaintiffs.

4. If the contract upon which the cattle were delivered required them to be delivered to defendants on the 15th day of April, 1857, the fact that the grass was not sufficiently grown to support the cattle up to that date is no excuse to the plaintiffs for their failure to deliver them by that day, unless defendants dispensed with the delivery on that day.

5. And if the defendants waive the delivery on said 15th day of April, then the plaintiffs were bound to deliver the cattle in accordance with such waiver.

6. And if plaintiffs fail to deliver the cattle according to the terms of such contract and waiver, then the jury ought to allow to defendants against the claims of plaintiffs for all expenditures defendants may have been subject to by reason of such failure.

7. If the cattle delivered by plaintiffs to defendants were delivered under the contract delivered in evidence by the plaintiffs, and if said cattle were not well broken, or were less than four or more than eight years old, or not in good working condition, or were lame, or blind, or deformed, or unsound, or from Arkansas or Texas, then the jury ought to allow to defendants against the claim of plaintiffs all expenses, losses and damages sustained by defendants by reason thereof.

The counsel for the appellants have elaborately argued the instructions given and refused, but we think it unnecessary to go over them in detail. Those given put the case before the jury fairly and legally, and also include the same matters contained in those asked by the defendants and refused.

That part of the third instruction, given on motion of the plaintiffs, under certain circumstances to recover the reasonable value of the cattle, is not approved, because it is not so claimed in the petition. The jury did not, however, find upon that ground; and the defendants cannot complain of it, for they adopted the same view and asked an instruction of similar effect.

Judgment affirmed.