State v. Ryan.

STATE OF MISSOURI, Respondent, v. DR. DAWSEY RYAN, Appellant.*

In the Springfield Court of Appeals, March 6, 1925.

1. **INTOXICATING LIQUORS**: Physicians: Physician May Legally Possess Intoxicating Liquors to Dispense in Legitimate Course of Practice. Druggist Act (Rev. St. 1919, sec. 4712), under which physician in good faith may legally possess and dispense intoxicating liquor in legitimate course of practice of profession, *held* not repealed by prohibition Acts of 1921 and 1923, in view of Acts 1921, p. 417, sec. 6592a, and Acts 1923, p. 240, sec. 13.

2. ———: ———: Physician not Prohibited from Keeping Liquor in Office by Provision Relative to Keeping in Residence. Provision of statute that possessor of lawfully obtained intoxicating liquor may keep it in his private residence *held* not to apply to or to prohibit physician from keeping in his office liquor for use in legitimate practice of profession.

3. ———: ———: Evidence of Illegitimacy of Possession of Liquor by Physician Held Sufficient to go to Jury. Evidence that part of liquor found in physician's possession was "white mule," being of such a low grade that no reputable physician would prescribe it or dispense it as medicine, *held* sufficient to take to jury question whether possession was for purpose other than use in legitimate practice of profession.

---

*Headnotes 1. Intoxicating Liquors, 33 C. J., Section 241 (Anno); 2. Intoxicating Liquors, 33 C. J., Section 241 (Anno); 3. Intoxicating Liquors, 33 C. J., Section 545.

Appeal from the Circuit Court of Stoddard County.— *Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*E. R. Lentz,* of Poplar Bluff, for appellant.

(1) The information is fatally defective, in that it does not negative any of the exceptions contained in

the Statute defining the offense. One of which is that of, "A regularly registered and practicing dentist, physician or veterinarian using alcohol, whisky or wine in the ordinary course and practice of his profession and under authority of the proper officer of the Federal Government." Laws of 1923, p. 240, sec. 13. All the authorities agree that when the exception constitutes a part of the description of the offense sought to be charged, the indictment, or information, must negative the exception, otherwise no offense is charged. State v. Meek, 70 Mo. 357; State v. Humfield, 182 Mo. App. 642-3; State v. De-Groat, 259 Mo. 375; State v. Smith, 233 Mo. 253; State v. Sonner, 253 Mo. 446. (a) Indeed, the doctrine obtains alike though such proviso or exception is contained in a subsequent section, for if it is descriptive of the offense, then negative words concerning it are to be employed in the information, to the end of bringing the charge within the exception or proviso and describing the offense with that clearness to which the accused is always entitled. State v. Humfield, 182 Mo. App. 642; State v. Hamlett, 129 Mo. App. 75 to 77. (b) In this case the exception is an integral part of the description of the crime. The exception occurs in the very section and the very clause of the Statute defining the offense, so that the line of cases, of which State v. O'Brien, 74 Mo. 549, and State v. Doerring, 194 Mo. 398, are examples, holding that, "Where the exceptions are not a part of definition of the crime; or where they are contained in distinct and independent clauses of the Statute, or in separate sections, it is not usually necessary to plead or prove them," have no application to facts in this case. Laws of Mo. 1923, p. 240, sec. 13, and cases above cited. (2) Section 6588, Revised Statutes 1919, as amended by Act 1921, Laws of 1921, page 414, provides:. "It shall be unlawful for any person, firm, association or corporation, his, its or their agents or employees to maufacture, sell, possess, give away or transport intoxicating liquors except as hereinafter provided." This Section was not

repealed by Act of 1923. (a) Section 6592a of said Act of 1921, Laws of 1921, page 417, contains the following proviso: "Provided further that wholesale liquor dealers and wholesale druggists shall be permitted and authorized to hold, possess and dispose of intoxicating liquors under such rules, regulations, penalties and restrictions as are now or hereafter may be prescribed by the laws of the United States Government or any department thereof." This Section was not repealed by Act of 1923. (b) Section 5 of the Act of 1923, Laws of 1923, page 238, provides. "This act shall not be so construed as to prevent the manufacture, or sale, by a distiller, or wholesale druggist of intoxicating liquors, alcohol or wine for non-beverage purposes under authority of, or in compliance with any laws of the United States or of this State. (c) Section 13 of said Act of 1923, provides: "It shall be unlawful for any person, firm or corporation in the State of Missouri, holding a permit to manufacture or sell ethyl alcohol, except on the written application, dated and signed by an individual, or an authorized agent of the firm or corporation, engaged in the manufacture of non-potable, toilet, medicinal, antiseptic, culinary or other non-beverage preparations: . . . or of a regularly licensed and practicing dentist, physician or veterinarian, using alcohol, whisky or wine in the ordinary and legitimate course of his profession and under authority of the proper officer of the Federal Government in the practice of his profession." (3) The information charges the defendant with the unlawful possession of intoxicating liquor. The proof shows, and in fact is admitted, that defendant had in his possession both whisky and alcohol. But the mere possession is not sufficient. That possession must be unlawful. There is not a scintilla of testimony tending in the least degree to show defendant's possession was in any manner unlawful. But on the contrary the undisputed and uncontradicted evidence shows conclusively that defendant purchased the liquor in his possession in a lawful man-

ner, in strict compliance with the laws of the United States and the regulations of the Treasury Department and under a permit from the director of Prohibition for Missouri. So that his possession thereof was absolutely lawful. See Act of Congress, known as the Volstead Act., sec.———; Regulation 60 of Treasury Department, Bureau of Internal Revenue, Prohibition Unit, Art. 4, secs. 403, 4, 5, and 6, pp. 45 and 46; Art. 14, sec. 1402, p. 141; sec. 1430, p. 145. Under this Statute and these regulations, he, as a practicing physician, upon obtaining the required permit, had the lawful right to purchase, hold, possess and use whisky and alcohol in the regular course of his professional practice. (a) The Act of the Missouri Legislature, approved March 28, 1921, permits wholesale liquor dealers and wholesale druggists to hold, possess and dispose of intoxicating liquors under such rules, regulations, penalties and restrictions as are now or may hereafter be prescribed by the laws of the United States Government or any Department thereof. Laws of Mo., 1921, p. 417, sec. 6592. This section was not repealed by Act of 1923. (b) Missouri Legislature by act, approved April 3, 1923, permits a regularly licensed and practicing dentist, physician or veterinarian, to purchase alcohol, whisky or wine under authority of the proper officer of the Federal Government, for use in the ordinary and legitimate course of his profession and practice. (c) The proper officer of the Federal Government, having authority to issue permits to purchase intoxicating liquors is the Director of Prohibition for Missouri. Permit No.———Mo.-J-2196, read in evidence is directed to Dr. Dawsey Ryan, Bernie, Missouri, is dated at Kansas City, Mo. Is signed, Office of Federal Prohibition Director at Kansas City, Mo., per L. F. DeHart, and reads, in part: "You are hereby authorized to purchase or procure from Schenley Products Company, Permit No. Ky-A-173, Midway, Ky., the kind and quantity of liquors stated below: via express, whisky, pints, Bell of Anderson 1.5 gallons, to be delivered to and stored on the

premises covered by permit duly issued to you on Form 1405, for disposition and use solely as provided in said permit.'' Another permit issued on the same day, is identical with the above, except, that it authorizes defendant to purchase five gallons of alcohol from George Weidemann Company, 506 N. 2nd St., St. Louis, Mo. (d) The application of Dr. Ryan the Federal Prohibition Commissioner at Washington, D. C., dated July 2, 1923, reads in part as follows: ''The undersigned Dawsey Ryan of Lot 6, Block 8, Bernie, Missouri, now engaged in business as physician, hereby makes application for permit to use six quarts of whisky and five gallons of alcohol for sterilization, laboratory work, compounding and administration to patients as authorized by section 704-5, Reg. 60, p. 45.'' Lot 6, Block 8, Bernie, Mo., is where Dr. Ryan's Office is located. The testimony shows conclusively that the liquor which the sheriff found in Dr. Ryan's office was the identical liquor which he purchased under these permits and that his possession was both rightful and lawful. (4) The possession of the liquor being admitted, and no testimony even tending to show that such possession was unlawful, but all the testimony showing conclusively that defendant's possession was lawful, the court erred in refusing to give defendant's instruction in the nature of a demurrer to the testimony. (5) Instruction No. 1, given on behalf of the State is erroneous for at least two reasons, (a) that there is absolutely no testimony to show that defendant's possession of such liquor was unlawful, hence there was no testimony to sustain the instruction. (b) The second paragraph of this instruction, in effect, amounts to a peremptory instruction to find the defendant guilty regardless of whether he had authority from the proper officer of the Federal Government to purchase the same for use in his practice or not, there is no law requiring liquor purchased by a physician for use in his practice to be kept in his private residence, no rule or regulation of any department, requires liquor thus acquired to be kept in

the purchaser's private residence. (6) Instruction No. 2, given on behalf of the State is erroneous, for the reason that there is neither allegation nor proof to sustain the instruction. Defendant is not charged with possessing or using the liquor for beverage purposes, nor is he charged with possessing any alcoholic liquids, except alcohol and whiskey, whether proprietary or patented, which contain one-half of one per cent or more by volume of alcohol, which are potable or capable of being used as a beverage. There was neither allegation or proof to warrant the giving of this instruction. (7) It is error to give an instruction where there is no evidence to support it. State v. Dagaina, 69 Mo. 490; State v. Thompson, 83 Mo. 260; State v. Tice, 90 Mo. 113; State v. Parker, 106 Mo. 225; State v. Westbrook, 186 Mo. 427; State v. Underwood, 263 Mo. 686. (8) Instructions 2 and 3 as requested by the defendant properly declared the law, and it was error to refuse them. The sole and only question of fact involved in this case was whether defendant's possession of the liquor found there was lawful or unlawful. This was essentially a question of fact to be found by the jury. It was not submitted to the jury in any instruction given in the case. The refusal to submit that question was the rankest kind of error.

No brief for respondent.

COX, P. J.—Prosecution under the State Prohibition Act charging unlawful possession of intoxicating liquor. On trial by jury defendant was found guilty and a fine of $700 assessed as punishment. From the judgment rendered thereon, he appealed.

It appears from the evidence that defendant is a practicing physician and maintains an office at Bernie in Stoddard County. The sheriff of the county "raided" this office and found therein about one and one-half gallons of alcohol, a quart of red whiskey and a jug which contained one-half pint of what the sheriff called "white

mule." With proof of the venue and that the liquor found in defendant's office was intoxicating, the State rested.

For the defense it was shown that the defendant is a regularly registered and practicing physician and had a permit from the county court to issue prescriptions for intoxicating liquor. Defendant testified and introduced in evidence exhibits to show that he had purchased the liquor under the Federal regulations relating to the purchase of liquor by physicians for use in the practice of their profession. He also testified that he bought the liquor for medical purposes.

The case was tried on the theory that the fact that defendant was a physician did not authorize him to keep intoxicating liquor in his office for use in his practice as a physician. Proceeding upon that theory the court gave the following instruction to the jury: "You are further instructed that if you find and believe from the evidence that the defendant had such intoxicating liquor in his office used by him as a physician and not in his private residence you cannot acquit the defendant even though you may find from the testimony that the defendant had secured a permit from the Federal government to purchase said liquor for use in prescribing the same in his practice as a physician." Defendant admitted that he had alcohol and whiskey in his office so that instruction was equivalent to an instruction to find defendant guilty.

The important problem for our solution is whether the State Prohibition Statute takes away from a physician the right to prescribe and dispense intoxicating liquor, or to compound and administer medicine of which intoxicating liquor forms a part, at his office and in the legitimate practice of his profession. If this defendant had the right to prescribe and administer intoxicating liquor either alone or as part of a compound as a medicine, then, of necessity, he must be permitted to possess the liquor to be used for that purpose at his office where he practices

his profession. The prohibition statute is separate and distinct from the druggist statute and does not repeal the provisions of the druggist act unless it be so clearly in conflict therewith that both cannot stand. It is familiar law in this State that prior to the adoption of the Federal Prohibition Amendment and subsequent State legislation of a prohibitive character, the adoption of the Local Option Law which put prohibition in force in the territory adopting it did not repeal or supersede the druggist's statute. The reason for that is that prohibition deals with intoxicating liquor as a beverage while the druggist statute deals with it as a medicine. That being true, it has been uniformly held that the authority of a physician to prescribe intoxicating liquor or of a druggist to sell upon that prescription was not affected by the adoption of prohibition under the Local Option Law. Generally speaking then, we must look to the statutes dealing with druggists and physicians to find the restrictions, if any there be, which the lawmakers have placed upon the authority of the physician in prescribing and dispensing intoxicating liquor as medicine. Going back to 1881, Acts of 1881, p. 133, in the druggist act passed at that time we find the following provision in section 12 of that act: "This act shall not apply to physicians putting up their own prescriptions. . . . " The same provision is found in Revised Statutes 1889, section 4620, and in Revised Statutes 1899, section 3046. This last section with some other sections of the Druggist Act was repealed in 1909. See Acts 1909, p. 472, sec. 1, but practically the same provision was retained in section 5764, Revised Statutes 1909, in the following language: "*Provided, however,* that nothing in this section shall be construed to interfere with any legally registered physician of medicine or dentistry in the compounding or dispensing of his own prescriptions." This provision is also found in the revision of 1919. [See Revised Statutes 1919, section 4712.] With these provisions in the statute it has been held that a physician who is not operating a

drug store could, if he acted in good faith, prescribe and dispense or administer intoxicating liquor to a patient in the legitimate course of the practice of his profession. [State v. Larrimore, 19 Mo. 391; State v. Young, 36 Mo. App. 517; State v. Bailey, 73 Mo. App. 576, 578.]

As long as that right remains, the right to keep in his possession intoxicating liquor to be used for that purpose necessarily follows: Section 4712, Revised Statutes 1919, has not been repealed unless it be that the Prohibition Acts of 1921 and 1923, Acts 1921, p. 413, et seq., and Acts 1923, p. 236 et seq., are so directly in conflict with the 1919 statute that both cannot stand and for that reason it should be held that the later acts must stand and the former fall. The Act of 1921, p. 313, section 6588, is the act which makes unlawful possession of intoxicating liquor a crime. As far as it can have any application to the question involved here, it reads as follows. "It shall be unlawful for any person . . . to . . . possess . . . intoxicating liquors within . . . the State of Missouri . . ." This section of that act has a proviso which will permit a person who has lawfully obtained possession of intoxicating liquor and is using it in a lawful way to keep it in his private residence but it nowhere mentions druggists and physicians and we do not think that it was intended by that act to repeal any part of the law relating to those persons. This same act at page 417, section 6592-A, provides that physicians may issue prescriptions for intoxicating liquor. This provision would be a nullity if the person to whom the prescription were issued could not go to a druggist and get it filled. It is apparent that it was not intended by this act to prevent druggists possessing intoxicating liquor for sale in their drug stores under existing laws. Neither do we think it was intended by that act to take away from a physician any right which he then possessed under existing law.

The prohibition act of 1923, Acts 1923, p. 240, section 13, appears to recognize the right of a physician

to possess alcohol, whiskey and wine for use in the practice of his profession, for, in making provision as to whom ethyl alcohol may be sold it includes a regularly registered and practicing physician who uses alcohol, whiskey or wine in the ordinary and legitimate course of his profession and under authority of the proper officer of the Federal Government in the practice of his profession. That provision would be meaningless if he were not permitted to possess intoxicating liquor for any purpose unless he kept it in his private residence. We do not think the provision that a person who has lawfully obtained intoxicating liquors and is using it in a lawful way may keep it in his private residence applies to a physician engaged in the legitimate practice of his profession. For that reason the instruction to the jury heretofore set out was erroneous and for that error the judgment must be reversed.

We may add, however, that we do not think a physician can use his authority as a physician to cover up violations of the law and the good faith of the physician may be inquired into. There was evidence enough in this case to take to the jury the question of the good faith of the defendant and the purpose for which he had the intoxicating liquor in his possession in his office. The sheriff testified that part of the liquor found in defendant's office was what he called "White Mule." This "White Mule" was whiskey of such a low grade that no reputable physician would either prescribe or dispense it as a medicine. If defendant had intoxicating liquor in his possession for any purpose other than for legitimate use in the legitimate practice of his profession, he should be convicted. If he kept it in his office in good faith for use in the legitimate practice of his profession, then his possession was lawful and he should be acquitted.

Judgment reversed and the cause remanded. *Bradley* and *Bailey, JJ.*, concur.